■ DIANE BENNETT, Appellant, v NEW YORK CITY TRANSIT AUTHORITY, Respondent. [772 NYS2d 320]—

Order, Supreme Court, New York County (Robert Lippmann, J.), entered July 26, 2002, which granted defendant's motion for summary judgment and dismissed the complaint, reversed, on the law, without costs, the motion denied, the complaint reinstated and the matter remanded for further proceedings.

On May 1, 1998, plaintiff slipped and fell on the southbound platform of the Franklin Street IRT subway station, sustaining injuries to her knee and wrists. Plaintiff filed a timely notice of claim pursuant to General Municipal Law § 50-e, in which she stated that her fall was caused by "a slippery and defective condition . . . consist[ing] of an unreasonably slippery and slick wet floor/ground within the station resulting from the negligent installation of tile . . . [which was] unusually slippery and slick, especially when wet, and . . . inappropriate for pedestrian traffic."

At her General Municipal Law § 50-h hearing, plaintiff testified that, after going through the turnstile, she "slipped and fell on the slippery subway tiles there." The Hearing Examiner did not ask plaintiff about the slippery condition or its source. The Hearing Examiner did ask plaintiff if it was raining on the day of the accident, and plaintiff responded that it was. The Hearing Examiner did not ask plaintiff anything further about the effect, if any, of the rain on the condition of the subway platform.

Plaintiff's complaint recites boilerplate language that defendant was responsible for maintaining the station in a reasonably safe condition, that her slip and fall was a result of defendant's negligence in its maintenance and operation of the station, "including the installation of floor tiles." In her bill of particulars, plaintiff described the bases of defendant's alleged negligence, including that it "caus[ed] or allow[ed] leaks to exist" at the Franklin Street subway station.

In her deposition, plaintiff testified that it was raining on the

day of the accident; that the upper stairway was wet but the lower stairway, which was covered, was dry; and that, right after she stepped through the turnstile, she slipped and fell into a puddle of water about three feet wide. She further testified that, when she recovered from her injuries and returned to work six months later, she observed that the floor in the Franklin Street station was wet every time it rained and that the rain leaked through the station's ceiling.

Defendant's Franklin Street station supervisor testified in his deposition that he inspected the station soon after the accident and found that the area was dry. Transit Authority logbooks from mid-January through the beginning of April 1998 catalog the existence of "water conditions" in the station, including on the southbound platform and, in some instances, the existence of water "oozing" through cracks in the walls.

Defendant moved for summary judgment, asserting that plaintiff's notice of claim was deficient because she did not identify the source of the alleged puddle on the floor of the station and that plaintiff's allegation that her fall was caused by the wet, slippery condition of the station floor was insufficient, as a matter of law, to establish defendant's liability.

The motion court granted defendant's motion on the grounds that plaintiff's notice of claim "did not adequately advise NYCTA that plaintiff was attributing her accident to an accumulation of water that had leaked onto the platform." The court also found that, although plaintiff had claimed to have fallen because the floor was wet, the accident report by the station supervisor shortly after the accident occurred stated that the area was clean and dry.

A notice of claim is a condition precedent to bringing a tort claim against a municipality (General Municipal Law § 50-e [1] [a]). Among other things, the notice must identify the claimant, state the nature of the claim and describe "the time when, the place where and the manner in which the claim arose" (General Municipal Law § 50-e [2]; *see Brown v City of New York,* 95 NY2d 389, 393 [2000]; *O'Brien v City of Syracuse,* 54 NY2d 353, 358 [1981]). A notice of claim is sufficient if it includes information that enables a municipal agency to investigate and evaluate the merits of a claim (*see Brown,* 95 NY2d at 393; *O'Brien,* 54 NY2d at 358). "Reasonably read, [General Municipal Law § 50-e] does not require . . . 'literal nicety or exactness' " (*Brown,* 95 NY2d at 393 [citations omitted]).

In this case, the notice of claim properly identified plaintiff as the claimant, stated when and where the accident occurred and described the defective condition that allegedly caused her to

slip and fall as "an unreasonably slippery and slick wet floor." This information was certainly sufficient to enable the defendant Transit Authority to investigate and evaluate plaintiff's claim. Plaintiff was not required to identify the source of the water that was alleged to be on the floor, as that was well within defendant's investigatory abilities, not only by observation, but also by review of its own internal records. Moreover, contrary to defendant's contention, plaintiff's subsequent testimony that the water—which her notice of claim explicitly stated was on the station floor where she fell—came from leaks in the station's ceiling does not constitute a change in her theory of the case.

In addition, although not explicit, the motion court appears to have determined that there were no disputed issues of fact that would preclude granting summary judgment to defendant. However, there is clearly a dispute between plaintiff and the Transit Authority's station manager as to the condition of the floor. Furthermore, the statement in the affirmation of defendant's attorney that "it is obvious that any wetness in the station was occasioned by passengers tracking in the water from the rainy outdoors" is not evidence, let alone dispositive evidence and of the source of the water on the station floor. Concur—Buckley, P.J., Tom and Rosenberger, JJ.

Saxe and Sullivan, JJ., dissent in a memorandum by Sullivan, J., as follows: The majority misstates the basis of defendant Transit Authority's (TA) claim of deficiency with respect to the notice of claim. The TA never argued that the notice of claim failed to identify the source of the alleged puddle on the station floor on which she fell. Rather, it argued that the notice of claim was completely devoid of any assertion to support plaintiff's current claim that the alleged wetness on the floor was the result of a leak in the station. In granting summary judgment dismissing the complaint, Supreme Court correctly recognized the issue, holding, properly so, that the "notice of claim did not adequately advise NYCTA that plaintiff was attributing her accident to an accumulation of water that had leaked onto the platform." I agree and would affirm the order dismissing the complaint.

Plaintiff alleges that she slipped and fell at approximately 5:15 P.M. on May 1, 1998 at the Franklin Street subway station in Manhattan. She was carrying an umbrella as it had been raining "heavily" during the ten to fifteen minutes it took her to walk to the station. Plaintiff entered the station, walked through the turnstile and after taking two steps "slipped and fell on the slippery tiles there." When a TA employee investigated the accident, she noted that "customer claimed she slipped

and fell on the slippery tiles on the platform." Plaintiff did not know what caused the accumulation of water.

In her notice of claim, dated June 19, 1998, plaintiff alleged that she fell "due to a slippery and defective condition located approximately immediately beyond the turnstiles" of the Franklin Street station. According to the notice: "The defective condition consisted of an unreasonably slippery and slick wet floor/ground within the station resulting from the negligent installation of tile unsuitable for a public subway station. The defendant had actual and constructive notice that the subject tiles were unusually slippery and slick, especially when wet, and were inappropriate for pedestrian traffic."

In more specific terms, the notice of claim stated that the TA's negligence included: "[F]ailing to properly clean, mop and/or wipe said condition and area; . . . failing to provide and install skid resistant flooring; . . . failing to provide and install flooring with an acceptable and safe 'coefficient of friction'; . . . failing to remove the defective and slippery tile; . . . failing to discontinue the use and installation of the defective and slippery tile . . . and . . . causing and creating the dangerous and defective condition."

At her statutory hearing on August 28, 1998, plaintiff testified that it was raining and that after reaching the station, "I went through the turnstile and two steps after I slipped and fell on the slippery tiles there."

In her complaint, dated July 28, 1999, plaintiff alleged that her accident was the result of the TA's "ownership, operation, management, maintenance, construction, installation, repair and control of the aforesaid public subway station and surrounding areas, including the installation of floor tiles, and the [d]efendant was otherwise negligent, careless and reckless." In her bill of particulars, dated February 3, 2000, long after the statute of limitations had run, plaintiff again alleged the varying ways in which the TA was responsible for the accident, including "negligently installing floor tiles unsuitable for a public subway station; in improperly conducting safety surveys; . . . in failing to provide and install flooring with an acceptable and safe 'coefficient of friction' " and other ways specifically related to the allegedly slippery tile. In the midst of the second page of plaintiff's seemingly inexhaustible litany of theories of negligence being expounded, she added, "in causing and/or allowing leaks to exist at said public subway station." Plaintiff continued to express several additional tile-related theories.

At her deposition held on April 12, 2001, plaintiff testified that she used the Franklin Street station every day she went to

work and that, before the accident, she had never seen water in the area where she fell. Although it had been raining heavily, she did not "look down at the floor or ground" while walking to the turnstile. She went through the turnstile and took "[j]ust one step" before she fell. After she fell, while on the floor, she saw that she was "sitting in water," deep enough to "soak" the back of her pants. When asked if she ever learned where the water came from, plaintiff replied, "I never tried to find out." After returning to work approximately six months after the accident, she saw, for the first time, water in the area where she fell. She saw water "[a]ny time it rains, there is a leak. That station leaks." She had never looked at the ceiling or noticed leaks until after the accident.

The TA subsequently moved for summary judgment dismissing the complaint, annexing in support of its motion the notice of claim, pleadings, plaintiff's hearing and deposition testimony, the TA's accident report and the local climatological data for the date of the accident. The TA argued that because it was raining heavily and water was being tracked in, it could not be held liable for failing continuously to mop up the water being accumulated.

Recognizing that plaintiff might now claim that the water was not being tracked in by the passengers but, rather, was the result of the leak plaintiff observed six months after the accident, the TA argued that if plaintiff were permitted to raise this theory, never asserted in her notice of claim, it would be prejudiced. Finally, the TA argued that plaintiff's initial theory—that the tiles were unreasonably slippery—was legally untenable.

As anticipated, plaintiff did, in fact, argue that the water on which she slipped came from a leak in the station roof and that her notice of claim "more than adequately apprised the [d]efendant of the nature of the claim and gave the [d]efendant an adequate opportunity to investigate the circumstances surrounding the accident." Plaintiff also argued that the only reason plaintiff did not disclose the existence of the leak during the statutory hearing was because "[p]laintiff was simply not asked where the water accumulation came from."

Supreme Court granted the motion, holding that the notice of claim "did not adequately advise" the TA that plaintiff was "attributing her accident to an accumulation of water that had leaked onto the platform." Since that was the sole basis of its determination, there is no basis for the majority's assertion that the motion court determined, implicitly or otherwise, that "there were no disputed issues of fact." It decided the summary

judgment motion without ever reaching the liability issue. Because the motion court was eminently correct in its assessment as to the deficiency of the notice of claim, its determination should be affirmed.

This is not the first instance of a plaintiff's fashioning a notice of claim and complaint to assert a particular theory, only to discover, too late, that the theory is lacking in merit. In such a case, the plaintiff cannot avoid dismissal by, as was done here, retooling the claim; he or she is limited to the factual theory presented in the notice of claim or within a reasonable time thereafter (*see e.g. Yeboah v New York City Tr. Auth.*, 249 AD2d 30 [1998]; *see also Wasserstrom v New York City Tr. Auth.*, 267 AD2d 36 [1999], *lv denied* 94 NY2d 761 [2000]).

A notice of claim serves to give the municipality or public authority sufficient information to allow it to "conduct a meaningful investigation, and assess the merits of the injured plaintiff's claim" prior to the commencement of suit (*Richard v Town of Oyster Bay*, 300 AD2d 561, 561 [2002]). In addition, the notice of claim provides the TA with the opportunity to "make an adjustment or payment of the claim" before the legal costs begin to accrue (Public Authorities Law § 1212 [4]). In the instant case, plaintiff chose to wait nearly two years after her accident to mention the leak at all. It was another year after that that she gave testimony as to the details of that allegation. "Merely providing notice of the occurrence is not adequate to constitute notice of a particular claim" (*Brown v New York City Tr. Auth.*, 172 AD2d 178, 180 [1991]). Insofar as the leak is concerned, plaintiff's notice of claim, hearing testimony and complaint were " 'utterly silent regarding causation, i.e., the nature of the defect which allegedly caused plaintiff [to be injured] and that fact alone made it impossible for the [TA] to conduct its investigation' " (*DiMenna v Long Is. Light. Co.*, 209 AD2d 373, 374 [1994] [citations omitted]). Worse yet, plaintiff's notice of claim was not merely "utterly silent" (*id.*), it was misleading. The TA was put on notice of allegedly slippery tiles and of a wet condition on a rainy day, an unremarkable event. The TA had no reason to search for leaks or other sources of water. It was almost two years later that plaintiff first gave notice of a leak and three years before she gave any details; by that time the TA was severely prejudiced in its ability to investigate the claim (*id.*; *see Moore v New York City Tr. Auth.*, 189 AD2d 862 [1993]).

It should be noted that, in June of 1998, when she filed her notice of claim, plaintiff obviously believed that she could prevail on a theory that the tiles were "unreasonably slippery." She

persisted in that belief through July 1999, when she filed her complaint. It was not until February 2000, nearly two years after the accident and almost 18 months after plaintiff first allegedly observed a leak in the subway station, that the claim of a leak first saw the light of day as an add-on to the list of claims of negligence appearing in her bill of particulars. Such a belated assertion was unreasonable as a matter of law. Interestingly, both *Wasserstrom* and *Hussein v New York City Tr. Auth.* (266 AD2d 146 [1999]), another case involving subway floor tile, were decided in late 1999, after plaintiff filed her notice of claim and complaint but before she had filed her bill of particulars.

As is now clear, at least since this Court's December 1999 decision in *Wasserstrom v New York City Tr. Auth. (supra)*, "The circumstance that the floor upon which plaintiff slipped was 'inherently slippery' by reason of its smoothness is not itself indicative of negligence. Nor does the additional unremarkable circumstance that the floor became more slippery when it was wet, as it allegedly was at the time of plaintiff's accident, bespeak negligence" (*id.* at 37 [citations omitted]). Plaintiff's initial theory, as set forth at length in her notice of claim and in her complaint and except for an add-on claim in her bill of particulars, was the same as that in *Wasserstrom*, i.e., the tile installed in the Franklin Street subway station was "unusually slippery and slick" as the result of the negligent installation of tile "unsuitable for a public subway station." Since a defendant cannot be held liable merely because a floor is inherently slippery "by reason of its smoothness" (*Wasserstrom v New York City Tr. Auth., supra*; *Hussein v New York City Tr. Auth., supra*; *Thomas v Caldor's*, 224 AD2d 171 [1996]), the only theory of liability properly before the Court, the TA is entitled to summary judgment dismissing the complaint.

In any event, even if plaintiff's claim of a leak were to be considered, there is no merit to plaintiff's claim. To prove the existence of an alleged leak in the subway ceiling, she relies on her own testimony that she first saw the leak six months after the accident and on logbook entries to prove that the TA had actual or constructive notice. She cannot recover on either premise.

As noted, plaintiff admitted that she did not know what caused the accumulation of water. She had not seen a leak prior to her accident; rather, she saw it for the first time six months later. In such circumstances, to conclude that the water came from a leak—if, indeed, there was such a leak—rather than from passengers' shoes and umbrellas, would be to indulge in sheer speculation (*see Daniely v County of Westchester*, 297 AD2d 654 [2002], *lv denied* 100 NY2d 501 [2003]).

Moreover, plaintiff's proof of the existence of a leak prior to May 1, 1998 and that the TA had notice of it also fails. In his deposition, TA supervisor Brown testified that a station supervisor would not only specifically note a leak or other problem in his or her logbook, but would also notify "Info Structure," in writing, of the problem. Indeed, certain of the logbook entries submitted by plaintiff include reports of cracked walls in other stations. None indicated that the station supervisor had observed a leak above the southbound platform at Franklin Street.

At most, some of the entries indicated that, on rainy or snowy days, there would be an accumulation of water on the platform floor, caused by passenger traffic or umbrellas, which required mopping. Other entries indicated only that a station supervisor happened to inspect the Franklin Street station while a cleaner was performing his/her tasks, specifically mopping the floor. None proved the existence of a leak at the station prior to May 1, 1998, much less that the TA had notice of it.